GRAY, Respondent, v. WESTERN TOWNSITE COMPANY, Appellant.

(148 N. W. 853.)

1. **Fixtures, What Constitutes—Building on Lot Agreed to be Purchased.**

Where plaintiff, who entered on a lot under an oral understanding between him and defendant that the lot was to be sold to plaintiff by defendant, constructed thereon a substantial building which he did not expect to remove therefrom, the building became a fixture, belonging to defendant owner of the fee, under Civ. Code, Sec. 899.

2. **Vendor and Purchaser—Implied Contract—Building Constructed Under Contract to Purchase Lot—Recovery for.**

Where plaintiff, through an understanding that he was to purchase defendant's lot, constructed a building thereon, and defendant thereafter informed him that, if the purchase was not consummated, or if he did not remove the building, the lot would be sold and the building would pass to a third party purchaser, **held**, that defendant is not bound, as upon an implied contract, upon the sale of lot and the building which was not removed, to compensate plaintiff therefor; plaintiff having waived the benefit of his contract by failing to pay for the lot.

3. **Vendor and Purchaser—Default in Contract—Improvements, Recovery For—Raising Price of Lot.**

That defendant, vendor, raised price of the lot after plaintiff, purchaser, constructed a building thereon, is no excuse for plaintiff's failure to consummate his contract of purchase, in a suit to recover for value of the building; for, if the contract was valid, defendant could not raise the price, while, if it was not, he had that right.

4. **Vendor and Purchaser—Rights of Person in Possession—Licensee.**

One in possession of realty under a contract of purchase is a mere licensee; and, **held**, that plaintiff, who was in possession without a valid contract of purchase, was, at most, entitled, in case of the exercise by vendor of his right to revoke the license, to sufficient notice to enable him to remove his improvments, and if purchaser fails to remove them within the time limited by the revocation, he cannot recover their value from the lot owner.

(Opinion filed October 6, 1914.   Rehearing denied Dec. 8, 1914.)

Appeal from Circuit Court, Gregory County.   Hon. WILLIAM WILLIAMSON, Judge.

Action by James E. Gray against the Western Townsite Company, a corporation, to recover the value of a building placed upon defendant's lot under a contract of purchase. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

*E. O. Patterson,* for Appellant.

*Woerth & Carlson,* for Respondent.

(1) Under point one of the opinion, Appellant cited:

Civ. Code, Sec. 899; Sweet et al. v. Myers et al., 53 N. W. 187; Bridges v. Thomas, 58 Pac. 955, 956 (Okla.); Pomeroy et al. v. Bell et al., 50 Pac. 683, 684 (Cal.); Merchants' National Bank v. Stanton, 56 N. W. 821, 822.

(2) Under point two of the opinion, Respondent cited:

Webster v. Drinkwater, 5 Me. 319, 17 Am. Dec. 238; Monroe v. Cannon, 24 Mont. 316, 81 Am. St. Rep. 439, 61 Pac. 863.

(4) Under point four of the opinion, Appellant cited:

Seymour v. Cleveland, 9 S. D. 94, 99.

POLLEY, J.   This action is brought for the recovery of the value of a certain frame building erected by plaintiff upon a lot belonging to the defendant, in the town of White River.

Plaintiff's complaint, after alleging that, on or about the month of June, 1911, the defendant was the owner of the lot in question, contains the following paragraph:

"That about the last-named date the defendant corporation herein, by its duly authorized officers and agents, requested the plaintiff to erect and construct a building for restaurant purposes on the afore-described lot owned by them; that the defendant, at the time of the making of said request, represented to plaintiff that, if he built the building aforesaid, he could do so with the right to subsequently buy the said described lot; that at the time of making such representations other inducements, such as reasonable price and terms, were held forth by defendant to plaintiff. And defendant further represented to plaintiff that, in case said described lot was not sold and conveyed to the plaintiff by defendant, then and in that case the plaintiff should receive the return of his building or its equivalent in money."

Then follows an allegation that plaintiff, relying upon the said representations of defendant, immediately entered upon said lot and erected a restaurant building thereon, and that he occupied

the same from said time until the 1st of May, 1912, when the de-fendant sold said lot and building thereon to a third party. Plain-tiff further alleged that, after said transfer and prior to the com-mencement of this action, he demanded that defendant return him the said building or pay him the value thereof, fixed at $1,250.

The undisputed facts show that the town site was platted in the spring of 1911; that some time in June or July of that year, plaintiff looked over the town site with an agent of the defendant and selected two lots, which said agent told him he could have. Nothing was said about the terms of payment, nor price of the lots, other than that the agent told plaintiff the terms would be reasonable, and that defendant would help him all it could. Plain-tiff thereupon proceeded to erect his building on one of the lots. It was the understanding of both plaintiff and defendant that de-fendant was to sell plaintiff the two lots in question, but the price or terms were not mentioned, and no contract or memorandum of the transaction was ever signed by either party. Some time—the record does not show just when—after the erection of the build-ing, nothing having been done toward a purchase of the lots, de-fendant gave plaintiff the privilege of taking only one of the lots (the one occupied by his building), and fixed the price thereof at $250. To this proposition plaintiff assented, but no steps were taken looking to the completion of the sale, or contract for sale, or payment of the purchase price, and no further negotiations seem to have taken place until the 15th day of January, 1912, when the defendant wrote plaintiff a letter requesting him to ar-range for a payment on the lot not later than the 25th day of that month. This letter also advised plaintiff that, unless he could make immediate payment of at least one-third of the purchase price of the lot, it would be necessary for plaintiff to remove his said building from the lot at once. On the 23d day of January, 1912, plaintiff wrote defendant, in reply to the above letter, that, if defendant would give plaintiff credit for $100 he claimed de-fendant owed him for work, he would sign the contract for the purchase of the lot. Immediately after the receipt of the above letter, defendant sent plaintiff a contract, to be signed by him, for the sale of two lots. This contract is dated the 1st day of Febru-ary, 1912. It provides for the sale of the two lots first mentioned, fixes the price thereof at $850, and requires a cash payment of

$450, and the balance of $400 on the 1st day of the following October. Some time after this plaintiff appears to have sent defendant a certified check for $138 and a statement of account showing defendant to be indebted to plaintiff in the sum of $112, amounting in all to $250, and a demand for a conveyance of the lot on which plaintiff's building stood. On the 20th day of March, 1912, defendant wrote plaintiff as follows:

"I am going to sell the lot that your building is on Mar. 30—12. So, if you do not settle the rent and move the building off, the building will be sold in with the lot."

And on the 22d day of March defendant wrote plaintiff as follows:

"Mr. Lucas has phoned us to-day of your letter to him with an inclosure of a certified check for $138.00 and a bill for plastering, sand, water, and chimney, amounting to $112.00. He further states that you wish lot 12 in block 8, White River. You moved lumber onto this lot and erected a building without any assurance of a contract covering the same, unless you should make the payments as required by the contract. This, as you know, was not complied with. At the time that you moved onto this lot the price was $350.00 for the same. Later on the price was advanced on all lots in White River, and you were duly notified, and again urged to sign a contract. Later there was another advance in price, and you were notified and asked to sign a contract. The price of that lot is now $600.00, and has been that figure since March 1st. You may buy it at that figure providing you send us $300.00 in cash and pay the balance of $300.00 September 1st, with interest at 7 per cent. from March 1, 1912. Your certified check of $138.00 is deposited in the bank at White River subject to your order. If you wish to take up the contract on lot 12 in block 8, you will have to forward to Ira Lucas, agent at White River, $162.00 additional, making a total of $300.00. Contract will be in White River in readiness for your signature. In case you cannot go to White River to sign the papers, you can have the money forwarded to White River and have the bank forward the papers to Stamford or elsewhere for your signature. We have waited nearly ten months for a settlement with you and am frank in stating that we are getting tired of the stalling and dilatory methods employed in your handling of this deal. * * * As you

were notified by our agent, Mr. Lucas, lot 12 in block 8, White River, upon which lot your building stands, will be sold on Saturday, March 30th. The conveyance of the lot, you understand, likewise transfers all the appurtenances and improvements upon the lot. We advise that you let us know by the 28th of March, 1912, as to what your intention is."

Plaintiff seems to have paid no attention to this letter, and, on the 10th day of April following, defendant sold the lot in question to a third party.

[1] The building erected by plaintiff was of a permanent character, and was erected without any expectation on his part that it should ever be removed from the lot on which it was built. This being the case, the building, of course, as soon as erected, became a part of the realty, and, as the fee of the lot was at all times in defendant, the defendant became the owner of the building as well as of the lot. Section 899, Civ. Code.

[2] Upon the foregoing state of facts, plaintiff contends there was an implied contract on the part of defendant that, if it failed to convey him title to the lot, it would return to him the building or its equivalent in money.

Plaintiff had judgment, and the case is here on appeal therefrom and from an order denying defendant's motion for a new trial.

One of appellant's assignments is based upon the alleged insufficiency of the evidence to support the verdict, and this presents the question: Is plaintiff entitled to recover upon the facts disclosed by this record? Whether the acts of plaintiff and defendant relative to the sale of the lot in question amounted to an oral contract for the purchase and sale of said lot, and whether the acts on the part of the plaintiff in going into possession thereon, constructing the building thereon, and doing work for defendant that was to be applied on the purchase price of the lot, amounted to such a part performance of said contract as would take the case out of the statute of frauds and entitle plaintiff to a specific performance thereof, are questions that are not before the court for determination. Whatever rights, if any, plaintiff may have had under such a contract have been waived, and he is here seeking to recover solely upon defendant's implied contract to pay the value of his building in case defendant failed, for any reason, to

convey him the title to the lot. After a careful consideration of the facts, we fail to find any conduct on the part of appellant from which such a contract can be implied. It is true, as claimed by respondent, that he was not a trespasser when he went upon the lot and constructed the building, and it may be assumed that the construction of the building upon the lot was a benefit to appellant; but it takes more than these facts to imply a contract to pay the value of the building. If plaintiff had gone upon the lot and constructed the building with appellant's permission and under a valid written contract by appellant to sell him the lot and deliver the title upon payment of the purchase price, plaintiff could not enforce the contract until the purchase price was paid or tendered; and the title to the property, including the building, would still be in appellant, and respondent could not waive the contract and recover the value of his building. Appellant could stand upon his contract and retain title to both the lot and the building. Coleman v. Stalnacke, 15 S. D. 242, 88 N. W. 107.

[3-4] Respondent assigns appellant's attempt to boost the price of the lot as an excuse for not paying for it, but a sufficient answer to this contention is that, if respondent had a contract to purchase the lot, then appellant could not boost the price, and respondent could enforce specific performance at the price that had already been fixed. On the other hand, if he did not have a contract to purchase the lot, then appellant had a right to boost the price, and, by waiving such contract, if any, as he may have had, he left the appellant free to "boost" the price at will. It has been declared by this court (Seymour v. Cleveland, 9 S. D. 95, 68 N. W. 171) that:

"One who enters upon real property under a contract of purchase occupies the position of a licensee until he completes his contract of purchase."

If one in possession under a contract of purchase is but a mere licensee, certainly respondent, who was in possession without even a contract of purchase, was only a licensee.

"A license in respect of real estate is an authority to do a particular act or series of acts upon the land of another without possessing any estate therein." 20 Cyc. 640.

A license in respect of real estate is revocable at the will of the licensor (25 Cyc. 645); and the most that the licensee is en-

titled to in case of revocation of the license is sufficient notice and an opportunity to remove his improvements. In this case respondent was notified that the lot would be sold on or before a given date, and that, if he did not remove his building by said time, it would be sold with the lot. This was a sufficient revocation of the license. It then became incumbent upon respondent to remove his building, and he was entitled, as a matter of right, to a reasonable length of time for that purpose. If defendant required plaintiff to remove the building, but did not give him sufficient time, it was liable for the reasonable value of the improvements less the rental value of the ground during the time plaintiff occupied it. He did not at the trial, and does not now, complain that the time allowed him by appellant was too short. In fact, it does not affirmatively appear from the record that he ever elected or intended to move it at all; and for that reason he has not shown a right of recovery against appellant.

This disposes of the case, and it is not necessary to consider appellant's other assignments.

The judgment and order appealed from are reversed.